IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DONZI N.V., § | |
|    Plaintiff § | |
| § | |
| v. § | |
| § | |
| GLOBAL FINANCIAL SERVICES, § | CASE NO. 4:11-CV-03642 |
| L.L.C., § | JURY |
|    Defendant § | |
| § | |
| v. § | |
| § | |
| INTERACCIONES BANKING § | |
| CORPORATION LTD, and § | |
| ALEJANDRO LARA ANZOLA § | |
|    Third-Party Defendants. § | |

### GLOBAL FINANCIAL SERVICES, L.L.C.'S FIFTH AMENDED ANSWER, COUNTERCLAIMS, AND THIRD-PARTY PETITION

Subject to and without waiver of its right to arbitrate certain controversies among the parties, the defendant Global Financial Services, L.L.C. ("Global") files its Fifth Amended Answer, Counterclaims, and Third-Party Petition, with InterAcciones Banking Corporation Ltd ("IAB") and Alejandro Lara Anzola ("Lara") joined as Third-Party Defendants, and shows the following:

### ANSWER

### I.

1. Global is without sufficient knowledge or information to form a belief as to the truth or accuracy of the allegations in paragraph 1 of Plaintiff Donzi, N.V.'s ("Donzi" or "Plaintiff") Original Petition, Application for Ex Parte Temporary Restraining Order, and Request for Temporary Injunction ("Petition").

2. Global admits the allegations of Paragraph 2 of Donzi's Petition.

3. Paragraph 3 of Donzi's Petition contains legal conclusions to which no response is required. Otherwise, the allegations in this paragraph are denied.

4. With respect to paragraph 4 of Donzi's Petition, Global admits that this Court has jurisdiction.

5. Paragraph 5 of Donzi's Petition contains legal conclusions to which no response is required. Otherwise, the allegations in this paragraph are denied. Global specifically denies that Donzi is entitled to relief.

6. Global admits that personal jurisdiction and venue are proper in Harris County, Texas, and that Global's principal place of business is located in Harris County, Texas. Global denies the rest of the allegations in paragraph 6 of Donzi's Petition. In addition, Global specifically denies that Global has had any transactions with Donzi and specifically denies assertions about any acts or omissions by Global allegedly giving rise to this suit.

7. Global admits that through at least May 2011, IAB was under the effective control of Lara. Otherwise, the allegations in paragraph 7 of Donzi's Petition are denied.

8. Global admits that it is an investment brokerage company in Houston, Texas. Otherwise, the allegations in paragraph 8 of Donzi's Petition are denied.

9. The allegations in paragraph 9 of Donzi's Petition are denied.

10. Global admits that in February 2011, Yvonne Schaap, who is not a representative of IAB, contacted Global requesting transfer of certain assets in IAB's accounts. Otherwise, the allegations in paragraph 10 of Donzi's Petition are denied.

11. The allegations in paragraph 11 of Donzi's Petition are denied.

12. Global admits that it has not transferred assets in IAB's account as improperly requested by Yvonne Schaap, who is not a representative of IAB. Otherwise, the allegations in

paragraph 12 of Donzi's Petition are denied.

13. The allegations in paragraph 13 of Donzi's Petition are denied.

14. The allegations in paragraph 14 of Donzi's Petition are denied. Global specifically denies that Donzi is entitled to relief.

15. The allegations in paragraph 15 of Donzi's Petition are denied. Global specifically denies that Donzi is entitled to relief.

16. The allegations in paragraph 16 of Donzi's Petition are denied. Global specifically denies that Donzi is entitled to relief.

17. The allegations in paragraph 17 of Donzi's Petition are denied. Global specifically denies that Donzi is entitled to relief.

18. The allegations in paragraph 18 of Donzi's Petition are denied. Global specifically denies that Donzi is entitled to relief.

19. The allegations in paragraph 19 of Donzi's Petition are denied. Global specifically denies that Donzi is entitled to relief.

20. The allegations in paragraph 20 of Donzi's Petition are denied. Global specifically denies that Donzi is entitled to relief.

21. The allegations in paragraph 21 of Donzi's Petition are denied. Global specifically denies that Donzi is entitled to relief.

22. The allegations in paragraph 22 of Donzi's Petition are denied. Global specifically denies that Donzi is entitled to relief.

23. The allegations in paragraph 23 of Donzi's Petition are denied. Global specifically denies that Donzi is entitled to relief.

24. The allegations in paragraph 24 of Donzi's Petition are denied. Global

specifically denies that Donzi is entitled to relief.

25. The allegations in paragraph 25 of Donzi's Petition are denied. Global specifically denies that Donzi is entitled to relief.

26. The allegations in paragraph 26 of Donzi's Petition are denied. Global specifically denies that Donzi is entitled to relief.

27. Paragraph 27 of Donzi's Petition contains legal conclusions, to which no response is required. By separate instrument, Global has generally demanded a jury.

28. Paragraph 28 of Donzi's Petition contains legal conclusions, to which no response is required.

29. The allegations in the Prayer of Donzi's Petition are denied. Global specifically denies that Donzi is entitled to relief.

30. Global generally denies any remaining allegations of Donzi's Petition against Global to the extent not expressly admitted above.

II.

31. Additionally, alternatively, and without waiver of the foregoing, Donzi is not entitled to relief, in whole or in part, because it has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

III.

32. Additionally, alternatively, and without waiver of the foregoing, Donzi is not entitled to relief, in whole or in part, because of applicable limitations periods.

33. Additionally, alternatively, and without waiver of the foregoing, Donzi is not entitled to relief, in whole or in part, because of laches.

34. Additionally, alternatively, and without waiver of the foregoing, Donzi is not

entitled to relief, in whole or in part, because of estoppel, including equitable estoppel, promissory estoppel, quasi-estoppel, and estoppel en pais.

35. Additionally, alternatively, and without waiver of the foregoing, Donzi is not entitled to relief, in whole or in part, because of waiver.

36. Additionally, alternatively, and without waiver of the foregoing, Donzi is not entitled to relief, in whole or in part, because of ratification.

37. Additionally, alternatively, and without waiver of the foregoing, Donzi is not entitled to relief, in whole or in part, because of unclean hands.

38. Additionally, alternatively, and without waiver of the foregoing, Donzi is not entitled to relief, in whole or in part, because it has failed to mitigate any alleged damages or relief it may be claiming.

39. Additionally, alternatively, and without waiver of the foregoing, Donzi is not entitled to relief, in whole or in part, because of lack of consideration and/or failure of consideration.

40. Additionally, alternatively, and without waiver of the foregoing, Donzi is not entitled to relief, in whole or in part, because of lack of standing.

41. Additionally, alternatively, and without waiver of the foregoing, Donzi is not entitled to relief, in whole or in part, because it has sustained no damages as a producing or proximate cause of any act or conduct by Global.

42. Additionally, alternatively, and without waiver of the foregoing, Donzi is not entitled to relief, in whole or in part, because any asserted damages it alleges (without admitting such damages) were caused by persons or entities other than Global.

43. Additionally, alternatively, and without waiver of the foregoing, Donzi is not

entitled to relief, in whole or in part, because any asserted damages it alleges (without admitting such damages) are a result of Donzi's own negligent and intentional conduct, acts, or omissions.

44.     Additionally, alternatively, and without waiver of the foregoing, Donzi is not entitled to relief, in whole or in part, because Global owes no fiduciary duty to Donzi.

45.     Additionally, alternatively, and without waiver of the foregoing, Donzi is not entitled to relief, in whole or in part, because Donzi has not suffered and will not continue to suffer any imminent or irreparable injury for which there is no legal remedy, and has not alleged any such injury.

46.     Additionally, alternatively, and without waiver of the foregoing, Donzi is not entitled to relief, in whole or in part, because it has not satisfied or complied with conditions precedent.

47.     Additionally, alternatively, and without waiver of the foregoing, Donzi is not entitled to relief, in whole or in part, because Global is entitled to recoupment against amounts that Donzi claims in this case.

48.     Additionally, alternatively, and without waiver of the foregoing, Donzi is not entitled to relief, in whole or in part, because Global is entitled to credit against amounts that Donzi claims in this case.

49.     Additionally, alternatively, and without waiver of the foregoing, Donzi is not entitled to relief, in whole or in part, because Global is entitled to offset against amounts that Donzi claims in this case.

50.     Additionally, alternatively, and without waiver of the foregoing, Donzi is not entitled to relief, in whole or in part, because Donzi's requested relief is in contravention of federal law, including with regard to requirements that mandate liquidation of securities in an

account in order to maintain federally required maintenance margins.

51. Additionally, alternatively, and without waiver of the foregoing, Donzi is not entitled to relief, in whole or in part, because Donzi's requested relief is in contravention of Global's contractual rights, including with regard to liquidation of securities.

52. Additionally, alternatively, and without waiver of the foregoing, Donzi is not entitled to relief, in whole or in part, because Donzi has not joined all necessary and indispensable parties.

53. Additionally, alternatively, and without waiver of the foregoing, Donzi is not entitled to relief, in whole or in part, because of the application of UCC section 8.115, which protects Global from claims such as those asserted by Donzi. *See, e.g.*, N.Y. U.C.C. § 8-115; TEX. BUS. & COMM. CODE ANN. § 8.115.

54. Additionally, alternatively, and without waiver of the foregoing, Donzi is not entitled to relief, in whole or in part, because Donzi does not have a proper claim for declaratory relief.

55. Additionally, alternatively, and without waiver of the foregoing, Donzi is not entitled to relief, in whole or in part, because at all relevant times Global acted in good faith and without notice of any asserted claims by Donzi to securities in IAB's accounts.

IV.

56. Global seeks reasonable attorney's fees and expenses incurred in defending this action, as provided by law.

COUNTERCLAIMS AND THIRD-PARTY CLAIMS

Now acting as Counter-Plaintiff and Third Party Plaintiff, Global brings the following counterclaims against the plaintiff Donzi N.V. ("Donzi") and third party claims against IAB and Lara:

V.

Parties

57. Plaintiff and Counter-Defendant Donzi has already made an appearance in this case. Donzi has alleged that it is a limited liability company, registered and located in the island of Curacao, Dutch West Indies.

58. Defendant, Counter-Plaintiff, and Third-Party Plaintiff Global is a Texas limited liability company, with its principal place of business in Harris County, Texas.

59. Third-Party Defendant IAB, through its Receivers Charles Walwyn and Robert Wilkinson, has made an appearance in this case. IAB is doing business in Texas and maintains a legal address in Antigua. IAB is a necessary party for the adjudication of the rights to the securities, including because the securities are held in IAB's account at Global, which IAB has represented is proprietary to IAB.

60. Alejandro Lara Anzola ("Lara") may be served at a residence and/or business in the United States at 593 Willow Bend Road, Weston, Florida 33327, or wherever he may be found. Service is requested on Lara.

VI.

61. The subject matter and amount in controversy are within the jurisdictional limits of this Court.

62. Alternatively, personal jurisdiction and venue are proper in this Court. Donzi

originally brought this lawsuit against Global in Harris County, Texas, and Global has properly brought third-party claims against IAB and Lara. In addition, Global's principal office in Texas is in Harris County. Further, Global's claims or actions against IAB and Lara arise out of the same transaction, occurrence, or series of transactions or occurrences made the bases of Donzi's claims or actions. IAB and Lara are doing business in Texas. Among other things, IAB and Lara have engaged in and transacted business in Texas and, as a result of their engagements in and transactions of business in Texas, all or a substantial part of the events giving rise to these claims occurred in Texas and involve actions directed at Global, which is organized in and maintains its headquarters in Texas. Further, IAB has a contractual relationship with Global, a Texas resident with its principal place of business in Harris County, and any or all of the parties are to perform the contracts in whole or in part in Texas, specifically in Harris County. IAB and Lara generally communicated with Global in Texas, specifically in Harris County. Alternatively, assuming hypothetically without admitting that Donzi has accurately alleged that various securities in the IAB accounts at issue belong to Donzi, through these communications IAB and Lara have made misrepresentations and omissions to Global concerning the accounts that IAB has with Global; IAB and Lara have made these misrepresentations and omissions to Global, in whole or in part, in Texas, specifically in Harris County; and Global has suffered damages in Texas, specifically in Harris County.

VII.

Background

63.    Global has provided brokerage services for IAB for many years. IAB has an investment portfolio with Global consisting of two accounts, having a consolidated net equity value of approximately $4,507,442 as of October 7, 2011. Global is an introducing broker to its

9

clearing firm, JPMorgan Clearing Corp. ("JPMorgan"), which as successor to Bear Stearns is the custodian of the accounts.

64. Through at least May 2011, IAB was under the effective control of Lara, who has represented to Global that these accounts are proprietary to IAB and that the securities in these accounts are owned by IAB. In this lawsuit, Donzi has alleged that certain of the securities, transferred to IAB's accounts in 2009, belong to Donzi. Donzi is not named on the accounts at issue; Donzi is not a customer of Global's; Donzi is not authorized to trade in, or withdraw funds from, the accounts; and Global did not know about Donzi or its claims to securities in these accounts until February 2011, when contacted for the first time by Donzi shortly before this lawsuit. Donzi's claim surprised Global, which was never apprised that anyone other than IAB owned the securities in IAB's accounts. IAB has previously represented to Global that the securities at issue are owned by IAB. In fact, IAB has acknowledged this by contract, representing, *inter alia*, that only IAB "has any interest in the Account(s) established pursuant to this Agreement."[1] As a result, Donzi's claims are in conflict with IAB's previous representations and the fact that all securities in IAB's investment portfolio are held in IAB's name.

65. Global believes that the securities at issue were owned by IAB at the time of their transfer from the prior custodial firm. Alternatively, assuming hypothetically without admitting that Donzi has accurately alleged that various securities in the IAB accounts at issue somehow belong to Donzi, then IAB and Lara have made misrepresentations, and omitted to state material facts, to Global, including with regard to the nature of the accounts, the ownership of the securities, and the ability of IAB to pledge those securities for loans. At all relevant times, IAB

---

[1] Ex. A, Customer Agreement, p. 7, ¶ 29(b). The terms of both of the customer agreements attached hereto as Exhibits A and B inure to the benefit of Global, the broker-dealer, and Global has the right to direct transactions. Global attaches to this pleading true and correct copies of the exhibits referenced herein, including Exhibits A and B, and incorporates them by reference.

has acted through Lara and other representatives, who made or participated in these misrepresentations and omissions.

66. Pursuant to the terms of customer agreements with Bear Stearns and its successor, JPMorgan, and based upon Lara's and IAB's representations and IAB's ownership of the securities, IAB was able to transact purchases and sales and borrow several million dollars on margin, using its assets in IAB's accounts as collateral. The terms of the customer agreements provide, without limitation, *inter alia*:

- To secure the payment and performance of your [IAB's] Obligations to each Clearing Agent entity, you hereby grant each Clearing Agent entity a lien on and a valid and first priority, perfected, continuing security interest in the following: (i) all property, including all investment property, held, carried or controlled by or through any Clearing Agent entity in which you presently have or in which you acquire an interest in the future, including all property in each Account in your name; ... and (iii) all proceeds of or distributions on the foregoing (collectively (i) through (iii) are referred to in this Agreement as "Collateral").[2]

- In order to secure the payment and performance of any of your outstanding Obligations to any Clearing Agent entity, the Clearing Agent Group may, to the fullest extent permitted by law, without prior notice to you, use, apply or transfer Collateral as it determines. Unless otherwise agreed in writing, the Clearing Agent Group may register and hold Collateral in its name or the name of its designee.[3]

- You represent and covenant that (a) you have the right to pledge and assign Collateral to the Clearing Agent Group; (b) Collateral is and shall at all times be free and clear of any liens, claims or encumbrances, except in favor of a Clearing Agent entity ....[4]

- Each Clearing Agent entity may elect to consider you in default of any or all agreements you may then have with it if: (i) you do not pay any liability or perform any Obligation to any Clearing Agent entity by the time you are obligated to do so; (ii) you otherwise breach, repudiate or default under this Agreement or any other agreement you may have with any Clearing Agent entity; ... (vi) a receiver is appointed with respect to you, any of your assets or the assets of a Responsible Party; ... or (viii) an

---

[2] Ex. A, Customer Agreement, p. 2, ¶ 3(b).
[3] Ex. A, Customer Agreement, p. 3, ¶ 3(f).
[4] Ex. A, Customer Agreement, p. 3, ¶ 4.

11

    event, circumstance or condition occurs that, in the Clearing Agent Group's judgment, materially impairs your creditworthiness, your ability to timely perform you Obligations to the Clearing Agent Group or otherwise causes us to view ourselves as insecure. The occurrence of any of the foregoing is referred to as an "Event of Default."[5]

- Upon the election by the Clearing Agent Group to consider you in default, each Clearing Agent entity shall have all of the rights and remedies of a secured party upon default under the NYUCC and other Applicable Laws and may, without notice to you, among other things: ... (ii) foreclose, collect, sell or otherwise liquidate any Collateral a Clearing Agent entity selects in its sole discretion, in any order and at any time, and apply, in a manner determined by the Clearing Agent Group in its sole discretion, the proceeds to satisfy any of your Obligations to any Clearing Agent entity and ... (iv) retain any Collateral and (v) set-off, net, and/or recoup a Clearing Agent entity's obligation to you against any of your Obligations to any Clearing Agent entity ... and (vi) calculate any obligation due to you by first deducting any Obligation that you owe to any Clearing Agent entity before determining the final amount of any such obligation and ... (viii) take any other action permitted by law or in equity to protect, preserve or enforce the Clearing Agent Group's rights or to reduce any risk to the Clearing Agent Group's of loss or delay ....[6]

- You hereby agree to pay, on demand, all reasonable costs, fees, expenses, liabilities and damages (collectively, "Costs") incurred by the Clearing Agent Group or your Brokerage Firm, as the case may be in connection with (i) enforcing its rights hereunder, (ii) any investigation litigation or proceeding involving your Account(s) or any property therein, ...(iv) any breach of failure by you to perform any term or provision of this Agreement, any other agreement between you and any Clearing Agent entity or any agreement governing your use of or access to any Electronic Service, or (v) the Clearing Agent Group acting in reliance upon your instructions or the instructions of your Brokerage Firm or the instructions of any other person authorized to act on your behalf. In each case and whether or not demand has been made therefore, you hereby authorize the Clearing Agent Group to charge you Account(s) for any and all such Costs.[7]

See Customer Agreement, attached as Exhibit "A", and also paragraphs 2 and 8 of the Options Agreement, dated November 16, 2010, and executed by IAB, attached hereto as Exhibit "B."

    67.    As a result, JPMorgan has a perfected security interest in the accounts and all of

---

[5] Ex. A, Customer Agreement, p. 3, ¶ 6(a).
[6] Ex. A, Customer Agreement, p. 3, ¶ 6(b).
[7] Ex. A, Customer Agreement, p. 4, ¶ 12.

the securities, and Global and JPMorgan have the contractual and legal right to liquidate securities in the accounts to cover the outstanding indebtedness under these loans.[8] Moreover, federal law mandates liquidation of securities in the accounts when the equity value of the marginable securities in the accounts falls below certain maintenance requirements. *See, e.g.,* FINRA Rule 4210(c); 12 C.F.R. § 220.4(d). IAB has been in default under the terms of the customer agreements, including, without limitation, because a receiver was appointed with respect to IAB and its assets, and IAB breached its agreements and became unable to perform its obligations, making both JPMorgan and Global insecure.

VIII.

Claims

68. Global repeats and realleges herein by reference the allegations in the paragraphs above, inclusive, as if fully set forth herein.

69. Additionally, alternatively, and without waiver of the foregoing, Global seeks declaratory judgment against Donzi and IAB, including pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201 and 2202, declaring Global's rights with respect to the accounts maintained by IAB with Global and the securities held therein, including with respect to any securities that Donzi alleges to be Donzi's. As referenced above, Global attaches two customer agreements with IAB as Exhibits A and B to this pleading and incorporates these by reference. IAB has expressly agreed that Global is a beneficiary of these agreements, and that Global may execute all securities transactions for its accounts, just as the clearing firm may do, under these agreements. As a result of IAB's default, in July 2011, Global exercised its rights under the customer agreements to sell securities to which Donzi has made no claim. Global, as the

---

[8] *See, e.g.,* customer agreements attached hereto as Exhibits A and B, and N.Y. U.C.C. § 9-207(b); TEX. BUS. & COMM. CODE ANN. § 9.207(b).

13

introducing broker dealer, has the right to liquidate assets and direct the offset of any credit or cash proceeds in IAB's accounts against any debit under the terms of the customer agreements and the UCC. *See, e.g.*, N.Y. U.C.C. § 9-615; Tex. Bus. & Com. Code § 9.615. Global seeks declaratory judgment that it is entitled to liquidate any securities as a result of IAB's defaults and apply any credit and cash in IAB's accounts against any debit balance, consistent with its rights of setoff under the terms of the customer agreements and the UCC.[9]

70. Additionally, alternatively, and without waiver of the foregoing, Global seeks declaratory judgment that it is entitled to recover from IAB, and charge against the IAB accounts, all reasonable costs, fees, expenses, liabilities, and damages incurred in this litigation, consistent with the terms of the customer agreements. Further, Global seeks a declaratory judgment with regard to any additional applicable rights consistent with the terms of the customer agreements.

71. Additionally, alternatively, and without waiver of the foregoing, as described herein, IAB and Lara are jointly and severally liable to Global for any and all alleged damages and liabilities that Donzi asserts against Global (without Global's admitting any such damages or liabilities), including under contribution and indemnity, as well as any and all reasonable costs, fees, expenses, damages, and liabilities (without admitting same) incurred by Global in connection with this litigation.

72. Additionally, alternatively, and without waiver of the foregoing, Global is entitled to recovery from IAB, including, together and in the alternative, under contract, breach of contract, quantum meruit, unjust enrichment, and/or implied contract, and Global is entitled to recovery from Lara under unjust enrichment. As a result of Lara's and IAB's conduct, Global

---

[9] In addition, to its rights under contract and law, Global must be able to liquidate such assets in order to comply with federal law, which mandates such liquidation when the equity value of the marginable securities in the accounts falls below certain maintenance requirements. *See, e.g.*, FINRA Rule 4210(c); 12 C.F.R. § 220.4(d).

14

has suffered damages for which Lara and IAB are responsible, jointly and severally, as well as any and all reasonable costs, fees, expenses, damages, and liabilities (without admitting same) incurred by Global in connection with this litigation.

73. Additionally, alternatively, and without waiver of the foregoing, Lara and IAB have fraudulently made material misrepresentations of fact, and omitted to state material facts, to Global regarding these accounts and the securities in these accounts. Lara and IAB have made material and false representations to Global that they knew were false at the time, or made the representations recklessly, as a positive assertion, and without knowledge of their truth. In addition, Lara and IAB concealed from or failed to disclose certain material facts to Global. They made such representations and omissions with the intent that Global act on them, and Global did act in reliance on these representations and omissions. Lara and IAB are jointly and severely liable for fraud at common law and for violation of Tex. Bus. & Com. Code § 27.01. As a result, Global has suffered damages for which Lara and IAB are jointly and severally responsible, and Global is entitled to recovery against Lara and IAB for exemplary damages, as well. Moreover, in addition to attorney's fees, as described below, Global is entitled to recover from Lara and IAB, jointly and severally, all relief authorized under Tex. Bus. & Com. Code § 27.01, *et seq.*, including but not limited to actual damages, exemplary damages, expert witness fees, costs for copies of depositions, and costs of court.

74. Additionally, alternatively, and without waiver of the foregoing, Lara and IAB have negligently made material misrepresentations of fact, and omitted to state material facts, regarding these accounts and the securities in these accounts. Lara and IAB have made representations, and omissions of material facts, to Global in the course of their business or in a transaction or transactions in which both Lara and IAB had an interest; in so doing, Lara and

15

IAB supplied false information for the guidance of others and failed to provide material information; they did not exercise reasonable care or competence in obtaining or communicating and failing to communicate the information; Global justifiably relied on the representations and omissions; and as a result, Global has suffered damages for which IAB and Lara are jointly and severally responsible, and Global is entitled to exemplary damages against Lara and IAB, as well. Lara and IAB are liable for negligent misrepresentation and gross negligence at common law.

75. Global pleads generally that IAB and Lara are jointly and severally responsible for any and all damages, fees, expenses, costs, remedies, or other relief requested by Global against them.

76. Additionally, alternatively, and without waiver of the foregoing, Donzi is liable to Global for negligence. Donzi has acted negligently, including, by its own allegations, allowing its securities to be deposited into an account under IAB's name and by failing to inform Global. As a result, among other things, IAB was able to borrow several million dollars on margin against the securities in the account. Global has suffered damages as a result.

IX.

77. Global repeats and realleges herein by reference the allegations in the paragraphs above, inclusive, as if fully set forth herein.

78. Additionally, alternatively, and without waiver of the foregoing, as a result of the actions of Donzi and of Lara and IAB, Global has been required to retain the undersigned law firm to represent it in this action. Global seeks to recover its reasonable attorney's fees and its costs from them under all applicable authority. With regard to Donzi, Global is entitled to such relief, including without limitation based both on Donzi's claims against Global and on Global's

counterclaims against Donzi, including, without exclusion, pursuant to claims for declaratory judgment, as may be applicable. With regard to Lara and IAB, Global is entitled to such relief, including without limitation under contract (including consistent with the terms of the customer agreements); pursuant to claims for declaratory judgment, as may be applicable; pursuant to § 38.001, *et seq.*, of the Texas Civil Practice & Remedies Code; and pursuant to § 27.01 of the Texas Business & Commerce Code.

X.

79. All conditions precedent to recovery in this matter have been performed or have occurred.

JURY

XI.

80. By separate instrument, Global has generally demanded a jury

PRAYER

XII.

WHEREFORE, subject to and without waiver of its right to arbitrate certain controversies among the parties, Global Financial Services, L.L.C. prays that Third-Party Defendants Lara be cited to appear and answer, and that upon final hearing, this Court award Global Financial Services, L.L.C. relief against Donzi, Lara, and IAB consistent with this pleading, including but not limited to, together and in the alternative, declaratory relief; indemnity; contribution; any and all reasonable costs, fees, expenses, liabilities (without admitting same), and damages incurred by Global in connection with this litigation; damages; exemplary damages; expert witness fees; costs for copies of depositions; costs of court; reasonable attorney's fees; pre- and post-judgment interest at the highest rate(s) allowed by law

or equity, compounded as allowed by law; costs; all other relief requested; and such other and further relief in law or in equity to which Global may be entitled.

                        Respectfully submitted,

                        **DOYLE, RESTREPO, HARVIN & ROBBINS, L.L.P.**

                        /s/ Andrew R. Harvin
                        Andrew R. Harvin
                        Attorney-in-Charge
                        Texas State Bar No. 091879007
                        600 Travis, Suite 4700
                        Houston, Texas 77002
                        Telephone: (713) 228-5100
                        Facsimile: (713) 228-6138
                        E-mail: aharvin@drhrlaw.com

                        *Attorneys for Global Financial Services, L.L.C.*

OF COUNSEL:

Christopher N. Hackerman
Texas State Bar No. 00796686
Email: chackerman@drhrlaw.com
**DOYLE, RESTREPO, HARVIN & ROBBINS, L.L.P.**
600 Travis, Suite 4700
Houston, Texas 77002
Telephone: (713) 228-5100
Facsimile: (713) 228-6138

**CERTIFICATE OF SERVICE**

    This is to certify that the above and foregoing instrument was served on the following counsel through the Court's CM/ECF system and United States First Class Mail on November 3, 2011:

Mary-Olga Lovett
Pamela Ferguson Sperber
Jennifer Tomsen
Greenberg Traurig, L.L.P.
1000 Louisiana Street, 17th Floor
Houston, Texas 77002
Facsimile: (713) 374-3505

Alison L. Smith
Iona N. Kaiser
McDermott Will & Emery
1000 Louisiana St., Suite 3900
Houston, Texas 77002
Facsimile: (713) 739-7592

Gordon A. Greenberg
Charles E. Weir
McDermmott Will & Emery
2049 Century Park East, Suite 3800
Los Angeles, California 90067
Facsimile: (310) 277-4730

                            /s/ Andrew R. Harvin
                            Andrew R. Harvin